UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

JESSECA ABSOLU,

    Plaintiff,

-vs-

TRANS UNION, LLC,

    Defendant.

CASE NO.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, JESSECA ABSOLU (hereinafter "Plaintiff"), by and through the undersigned counsel, sues Defendant, TRANS UNION LLC (hereinafter "Trans Union"), and in support thereof respectfully alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

**PRELIMINARY STATEMENT**

1. This is an action alleging Trans Union violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (FCRA) by producing and selling credit reports inaccurately reporting Plaintiff as "deceased", and thereby failing to follow policies and procedures to ensure the maximum possible accuracy of the credit report it produced and sold, as Plaintiff was of course very much alive.

2. Plaintiff seeks the entry of a judgment, actual damages, statutory damages, punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §§ 1681n and 1681o.

3. The FCRA creates a private right of action against a consumer reporting agency for the negligent, 15 U.S.C. § 1681o, or willful, 15 U.S.C. § 1681n, violation of any duty imposed by the FCRA. *Alexander v. Certegy Check Servs.*, No. 8:16-CV-859-17JSS, 2016 U.S. Dist. LEXIS 180072, at *5 (M.D. Fla. Dec. 29, 2016) (*citing Collins v. Equifax Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015)).

## **JURISDICATION AND VENUE**

4. Jurisdiction for this Court is conferred by 28 U.S.C. § 1331, as this action involves violations of the FCRA.

5. Venue is proper for this Court pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

6. Venue is proper in this District as Plaintiff is a natural person and resident of Broward County, Florida; the violations described in this Complaint occurred in this District; and Trans Union transacts business within this District.

7. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

8. Trans Union is a corporation with its principal place of business in the State of Illinois and is authorized to do business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hays Street, Tallahassee, Florida 32301.

9. Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Trans Union is regularly engaged in the business of assembling,

2

evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

10. Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

**FACTUAL ALLEGATIONS**

11. Since approximately March of 2023 Trans Union has reported Plaintiff as "deceased" on her Trans Union consumer credit report.

12. On or about January of 2023, Plaintiff applied for an Apple co-branded credit card account. Plaintiff was approved and the Apple account was opened.

13. All of a sudden, and without notice, weeks later the account was closed. After such occurrence, Plaintiff reviewed her Trans Union credit report and discovered the deceased notation on her credit report.

14. On March 23, 2023, Plaintiff obtained a copy of her Trans Union credit report in which Apple Card account 120001208990**** listed the account as closed and "Consumer Deceased".

15. This made no sense, as Plaintiff's other credit accounts were reported as "pays on time."

16. Trans Union know that it would be impossible for Plaintiff to pay her other accounts on time if she were deceased yet reported her as deceased anyway.

17. On March 31, 2023, Plaintiff mailed a written dispute letter to Trans Union. In the dispute letter, Plaintiff explained that she was very much alive and

well. To confirm her identity, a copy of her driver's license and Social Security card were included. Also, in this letter, Plaintiff provided images from her utility bill that she was currently paying and a copy of her twin brother's death certificate as she believed Trans Union was mixing her up with her deceased brother.

18. Plaintiff mailed her detailed dispute letter to Trans Union via USPS Certified Mail 7022 2410 0003 0821 9255.

19. On April 9, 2023, Plaintiff received dispute response from Trans Union stating, "Trans Union does not have the duty to disclose any information on a credit report to a third-party." The letter further provided that in order to access the credit report Trans Union required a Power of Attorney and "if the credit report you wish to obtain belongs to an individual who is deceased, you need to provide us with a death certificate accompanied by a document that proved you have the authority to act of the decease's behalf".

20. Again, Plaintiff is not deceased. Plaintiff has been alive at all relevant times of the allegations in this Complaint.

21. After received such a response indicating that Trans Union still believes Plaintiff is deceased, on May 10, 2023, Plaintiff mailed another dispute letter to Trans Union. Again, Plaintiff reiterated that she is very much alive. To confirm her identity, a copy of her driver's license and Social Security card were included. Also, in this letter, Plaintiff provided images from her utility bill that she was currently paying and a copy of her twin brother's death certificate as she

believed Trans Union was mixing her up with her deceased brother. Additionally, Plaintiff included Trans Union's previous response that she received in the mail.

22. Plaintiff mailed her detailed dispute letter to Trans Union via USPS Certified Mail 7017 2400 0000 6719 9142.

23. Trans Union continues to fail to do any investigation about Plaintiff's disputes. Trans Union never made any efforts to contact Plaintiff about her disputes.

24. Trans Union clearly knew or should know Plaintiff is not deceased. Plaintiff sent in all necessary documentation for Trans Union to remove the erroneous deceased reporting. However, Trans Union's agents failed to conduct any investigation into Plaintiff's disputes.

25. Trans Union willingly chose to continue reporting a wrong date of birth and that Plaintiff was deceased, when Trans Union fully knew she was alive and had a different date of birth. Trans Union continues to profit from having Plaintiff's credit report and selling it for a profit while denying Plaintiff the ability to look at her own credit report.

26. As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

    i. Monies lost by attempting to fix her credit;

    ii. Loss of time attempting to cure the errors;

    iii. Mental anguish, added stress, aggravation, embarrassment, sleepless nights, and other related impairments to the

enjoyment of life; Plaintiff is being physically affected by Defendant actions;

    iv. Reduction in credit score;

    v. Apprehensiveness to apply for credit due to the fear of rejection.

## COUNT I
## Violation of the Fair Credit Reporting Act
## 15 U.S.C. § 1681e(b)
## as to Defendant, Trans Union LLC

27. Plaintiff re-alleges and re-incorporates paragraphs one (1) through twenty-six (26) as if fully stated herein.

28. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure the maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

29. Despite Trans Union believing that Plaintiff was dead, it published her credit report (containing the "customer deceased") to furnishers.

30. The FCRA requires that Trans Union must follow procedures which assure that the reports they sell meet the standard of "maximum possible accuracy." 15 U.S.C. § 1681e(b).

31. The FCRA requires that Trans Union must maintain reasonable procedures to assure that reports are sold only for legitimate "permissible purposes." 15 U.S.C. §§ 1681e(a) & 1681b. Trans Union, despite having access to

the Social Security Death Index, refuses to cross-check individuals for accuracy of deceased reporting.

32. Trans Union places a "deceased" notation or marking on reports when it is advised from any of their many data furnishing sources that a given consumer is deceased.

33. Trans Union does not request or require a death certificate or any other proof from any data source which advises that a consumer is "deceased" showing that the consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

34. Trans Union does not independently verify with any source that a consumer is, in fact, deceased before placing a "deceased" mark on that consumer's report.

35. Indeed, Trans Union employs no procedures at all which assure that a consumer with a "deceased" mark on his/her report is, in fact, deceased before placing the "deceased" mark on that consumer's report and selling that report.

36. Even in instances where other data on the face of the consumer's report indicates that she is not deceased, Trans Union employs no procedures which assure that a consumer with a "deceased" mark on her report is, in fact, deceased before placing the "deceased" mark on that consumer's report.

37. Nevertheless, Trans Union routinely sells to third parties credit reports for persons with a "deceased" mark on their reports with no credit score, despite a request by the purchaser of the report for a credit score for that consumer.

7

38. Once a "deceased" mark is placed upon a consumer's report, Trans Union will not calculate and will not provide a credit score for that consumer.

39. Tran Union knows that many third-party credit issuers require a credit score in order to process a given credit application.

40. Trans Union knows that consumers without credit scores are unable to secure any credit from most credit issuers.

41. Trans Union knows that living consumers are turned down for credit specifically because Trans Union is reporting them as "deceased" and without a credit score.

42. Trans Union has received and documented thousands of disputes from consumers complaining that Trans Union's credit reports have them erroneously marked as "deceased" and without a credit score.

43. Nevertheless, Trans Union employs no procedures which assure that a consumer marked as "deceased" on Trans Union's reports is, in fact, deceased.

44. Trans Union has no independent procedure to change an erroneous deceased status on its own and will merely parrot their furnishing source.

45. Nor does Trans Union employ any procedures to limit or stop the furnishing of reports to third parties for consumers which it has marked as "deceased" under any circumstances.

46. For years after a consumer's actual death, Trans Union will continue to sell for profit credit reports about that consumer.

47. Trans Union will only remove a deceased consumer's file from its credit reporting database when it is no longer valuable to Trans Union – meaning that nobody is continuing to buy those reports.

48. Trans Union charges third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as it would for any other report.

49. Trans Union profits from the sale of reports on the deceased.

50. Trans Union has in their credit reporting database hundreds of thousands of "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

51. Trans Union knows that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to Trans Union to be a common and major source of identity theft.

52. Trans Union warns the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased and requires relatives to provide a death certificate or executorship papers, among other proofs, before accessing the deceased consumer's credit information or report.

53. Trans Union has no similar death certificate, executorship paper, or any other proof requirements for their data sources which report a consumer as

deceased or for the buyers of their reports which access the purportedly deceased consumer's information.

54. Indeed, Trans Union sells reports of the deceased to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

55. For consumers who are deceased, there exists no permissible purpose under the FCRA for Trans Union to ever sell their credit reports, absent a court order.

56. Trans Union knows that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

57. At all times pertinent hereto, Trans Union was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

58. At all times pertinent hereto, the conduct of Trans Union, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of the Plaintiff herein. Damages continue to accrue as Trans Union continues to report Plaintiff as deceased.

59. Trans Union's conduct, action and inaction were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 USC § 1681o.

60. Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 USC § 1681n and/or § 1681o.

**WHEREFORE,** Plaintiff, JESSECA ABSOLU, respectfully requests that this Court award statutory, actual and punitive damages against Defendant, TRANS UNION, LLC, to Plaintiff, award Plaintiff her attorney fees and the costs of this action pursuant to 15 U.S.C. § 1681n and/or § 1681o; and grant all such additional relief as the Court deems appropriate.

## COUNT II
### Violation of the Fair Credit Reporting Act
### 15 U.S.C. § 1681i
### as to Defendant, Trans Union LLC

61. Plaintiff re-alleges and re-incorporates paragraphs one (1) through twenty-six (26) as if fully stated herein.

62. Trans Union violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving notice of such inaccuracies, by failing to conduct a lawful reinvestigation, by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's

credit file; and by relying upon verification from sources it has to know can be unreliable.

63. Plaintiff provided all the necessary information for Trans Union to conduct a reasonable investigation and know she was alive, including but not limited to current utility bills and a W-2.

64. Trans Union was aware that Plaintiff is very much alive and failed to correct the erroneous deceased notation in violation of the FCRA and its own internal policies and procedures.

65. Clearly Trans Union conducted no meaningful investigation into Plaintiff's disputes, as anyone with nominal training would be able to read her review and realize instantly that Plaintiff is alive and the victim of a "mixed credit file" or other error caused by Trans Union.

66. As a result of this conduct, action and inaction of Trans Union, Plaintiff suffered damages by stress associated with fear of denial, and mental and emotional pain stemming from anguish, humiliation, and embarrassment. Plaintiff was under great stress attempting to resolve the mistake being reported by Trans Union.

67. Trans Union's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover under to 15 USC § 1681o.

68. Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 USC § 1681n and/or to 15 USC § 1681o.

**WHEREFORE,** Plaintiff, JESSECA ABSOLU, respectfully demands judgment and compensatory and punitive damages against Defendant, TRANS UNION LLC, for her attorney fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court deems appropriate.

DATED this 19th day of May 2023

Respectfully submitted,

**/s/Octavio Gomez**
Octavio "Tav" Gomez
Florida Bar #:0338620
Georgia Bar #: 617963
Pennsylvania #: 325066
The Consumer Lawyers PLLC
412 E. Madison St, Ste 916
Tampa, FL 33602
Cell: (813)299-8537
Facsimile: (844)951-3933
Primary Email:
tav@theconsumerlawyers.com
Secondary Email:
Lisa@theconsumerlawyers.com
*Attorney for Plaintiff*